IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Greensboro Division

| | | |
|---|---|---|
| TRAVIS ANDRE GOLDSTON,<br><br>Plaintiff<br><br>v.<br><br>BREECE ENTERPRISES, INC.,<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 1:26-cv-901 |

**BRIEF IN SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS**

Defendant Breece Enterprises, Inc. ("Breece"), pursuant to Local Rules 7.2 and 7.3, submits this brief in support of its Partial Motion to Dismiss the Amended Complaint (DE 4) filed by Plaintiff Travis Andre Goldston.

**NATURE OF THE MATTER BEFORE THE COURT**

Plaintiff, who is proceeding *pro se*, is a former Breece employee. He commenced this action on July 27, 2026, in Guilford County (NC) District Court, and filed an Amended Complaint on August 31, 2026. Breece removed the action to this Court on September 1, 2026 (DE 1 and 1-1) The Amended Complaint uses the standard form complaint for employment discrimination and invokes Title VII of the Civil Rights Act of 1964, the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, three North Carolina statutes, and a City of Greensboro ordinance. (DE 4 at 3).

Breece moves under Rule 12(b)(6) to dismiss every claim other than Plaintiff's Title VII claims, and to confine the Title VII claims to those that are timely and within

the scope of Plaintiff's charge of discrimination, and excluding any claim for hostile work environment. Breece has answered the remaining claims, which challenge Plaintiff's claims regarding the June 10, 2025 discharge.

## STATEMENT OF FACTS

For purposes of this motion only, Breece accepts the well-pleaded factual allegations of the Amended Complaint as true.

### A. The Allegations of the Amended Complaint.

Plaintiff alleges that he began working for Breece on June 10, 2024, as a laborer and crew lead (DE 4, ¶¶ 1–2). He alleges that a co-worker subjected him to racial slurs, that he reported the co-worker to Superintendent Mike Dewitt and Foreman Stephan Davenport "[o]n or about September 3, 2024," and that the co-worker made threats and used additional slurs during that meeting. (*Id.* ¶¶ 6–8). He alleges that on or about October 12, 2024, he reported workplace-safety and federal transportation violations to Dewitt, Davenport, and another foreman (*Id.* ¶¶ 10–11). He alleges that on or about December 17, 2024, Breece placed the co-worker back on Plaintiff's crew (*Id.* ¶ 12). The Amended Complaint alleges no act of harassment by the co-worker, or by anyone else, after December 17, 2024.

Plaintiff further alleges, without identifying any dates, that Breece did not assign him commercial driving duties, denied him equipment-operator training, and passed him over for promotion to an Equipment Operator position (*Id.* ¶¶ 14–15). He alleges that in April and May 2025, while working on the Roberts Court Sewer Replacement Project in

High Point, he was directed to drive a vehicle that had failed a pre-trip inspection and to install materials that did not comply with local building requirements, and that Dewitt described the materials as a form of "planned obsolescence" (*Id.* ¶¶ 16–19). He alleges that he received a disciplinary write-up on June 9, 2025, that he announced a family pregnancy on June 10, 2025, and that Breece terminated his employment later that day and replaced him with a white co-worker (*Id.* ¶¶ 20–23). On or about July 1, 2025, after his employment ended, Plaintiff "contacted the High Point Housing Authority" about the Roberts Court project (*Id.* ¶ 26).

The Amended Complaint lists Breece's address, and Plaintiff's place of employment, as 631 Old Thomasville Road, High Point, North Carolina (*Id.* at 2–3). Plaintiff alleges that the discriminatory acts occurred from "July 2024, through June, 2025" (*Id.* at 4).

**B. Plaintiff's EEOC Charge**

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 435-2025-01433, which he signed on August 18, 2025 (DE 1-1 at 12–14). Under "Discrimination Based On," the Charge lists only "Retaliation," and it identifies June 10, 2025, as both the earliest and latest date on which discrimination took place (*Id.* at 12). The Charge's narrative describes the September 3, 2024 meeting and the December 17, 2024 reassignment, the April and June 2025 write-ups, the Roberts Court project, and Plaintiff's discharge (*Id.* at 12–13). It says nothing about equipment-operator training or promotion to an Equipment Operator position.

With respect to driving duties, the Charge states that on April 24, 2025, Dewitt "offered me a full-time CDL-required driving position, which I respectfully declined" (*Id.* at 13). The EEOC issued a Determination and Notice of Rights on April 27, 2026. (DE 4 at 12.)

## QUESTIONS PRESENTED

1. Whether Plaintiff's claims under the federal and North Carolina False Claims Acts, N.C. GEN. STAT. § 75-1.1, N.C. GEN. STAT. § 143-422.2, the Greensboro Code of Ordinances, and the workplace-safety, motor-carrier, and building-code provisions referenced in the Amended Complaint fail to state a claim upon which relief can be granted?

2. Whether Plaintiff's Title VII claims are time-barred to the extent they rest on acts that occurred more than 180 days before he filed his EEOC charge, including his hostile-work-environment claim?

3. Whether Plaintiff's Title VII claims based on the alleged denial of training, promotion, and commercial driving assignments exceed the scope of his EEOC charge?

4. Whether Plaintiff's Title VII retaliation claim may rest on complaints about workplace safety, transportation regulations, building codes, or "planned obsolescence," or on post-termination reports to a third party?

## ARGUMENT

### I. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A document filed *pro se* is "to be liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks omitted), but liberal construction does not relieve a *pro se* plaintiff of the obligation to plead facts that, if true, would entitle him to relief under a recognized cause of action. *See Hill v. FBI Crim. Just. Info. Servs. Div.*, 2026 U.S. Dist. LEXIS 205071 at *3 (while recognizing less stringent standard applied to *pro se* plaintiffs, "Nevertheless, 'a pro se plaintiff must still allege facts that state a cause of action.'" (internal citations omitted)).

In ruling on a Rule 12(b)(6) motion, the Court may consider documents attached to the complaint as well as a document that is "integral to the complaint and authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (internal quotation marks and citation omitted). Plaintiff attached the EEOC's Determination and Notice of Rights to the Amended Complaint (DE 4 at 12–13), and he filed his EEOC charge with his original complaint (DE 1-1 at 12–15). The Amended Complaint relies on the Charge to plead exhaustion of administrative remedies (DE 4 at 8), and its authenticity cannot be disputed by the party who filed it. Title VII's charge-filing requirement is a nonjurisdictional claim-processing rule that must be timely raised, *Fort Bend Cnty. v. Davis*, 587 U.S. 541 (2019), and a limitations defense may be resolved under Rule

12(b)(6) where the facts necessary to decide it appear on the face of the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc).

## II. PLAINTIFF'S NON-TITLE VII CLAIMS FAIL AS A MATTER OF LAW.

### A. The Amended Complaint States No Claim Under the Federal False Claims Act.

The FCA imposes liability on a person who, among other things, knowingly presents a false or fraudulent claim for payment or approval to the United States. 31 U.S.C. § 3729(a)(1)(A). A "claim" is a request or demand for money or property that is presented to an officer, employee, or agent of the United States, or to a contractor, grantee, or other recipient where the United States provides or will reimburse some portion of the money requested. *Id.* § 3729(b)(2)(A). A private person may bring an action for such a violation only "for the person and for the United States Government," in the Government's name, *id.* § 3730(b)(1), and the complaint must be filed *in camera*, remain under seal for at least 60 days, and be served on the Government, *id.* § 3730(b)(2).

The Amended Complaint does not satisfy any of these requirements. It does not identify any claim for payment that Breece presented to the United States or to any recipient of federal funds, much less a false one. Plaintiff alleges that improper materials were used on a sewer project at an apartment complex "managed by the High Point Housing Authority" (DE 4, ¶ 19), but he alleges nothing about who paid for the work, whether any federal funds were involved, or any request for payment Breece submitted. And the action was not brought in the name of the United States, filed under seal, or served on the Government.

Nor does the Amended Complaint state a retaliation claim under 31 U.S.C. § 3730(h). To state such a claim, a plaintiff must allege facts supporting a reasonable inference that "(1) he engaged in protected activity; (2) his employer knew about the protected activity; and (3) his employer took adverse action against him as a result." *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 200 (4th Cir. 2018). Protected activity consists of lawful acts "in furtherance of" an FCA action or "other efforts to stop 1 or more violations" of the FCA. 31 U.S.C. § 3730(h)(1). Plaintiff's alleged internal complaints concerned trench protection, vehicle inspections, drug and alcohol rules, and local building requirements (DE 4, ¶¶ 10–11, 17–18). Those are complaints about regulatory compliance, not about fraud on the Government, and the Fourth Circuit has distinguished protected FCA activity from complaints that "merely express concern about regulatory non-compliance." *Grant*, 912 F.3d at 202. The only activity Plaintiff alleges that concerns the Roberts Court project's owner is his July 1, 2025 contact with the High Point Housing Authority (DE 4, ¶ 26), which occurred three weeks after his discharge and could not have caused it. The FCA claim should be dismissed.

**B. The Amended Complaint States No Claim Under the North Carolina False Claims Act.**

The North Carolina False Claims Act, N.C. GEN. STAT. §§ 1-605 through 1-618, fails for the same reasons. Liability under N.C. GEN. STAT. § 1-607 requires a false or fraudulent claim, and a "claim" is a request or demand for money or property presented to the State or to a recipient of State funds. N.C. GEN. STAT. § 1-606. It also has procedural

requirements similar to the federal statute, including filing under seal in the name of the government, and not serving the Complaint in the Defendant until ordered by the Court. N.C. GEN. STAT. § 1-608. The Amended Complaint fails to satisfy these requirements.

The Amended Complaint also identifies no claim presented to the State of North Carolina and no State funds. Its retaliation provision, N.C. GEN. STAT. § 1-613, protects lawful acts taken in furtherance of an action under the Act or other efforts to stop violations of N.C. GEN. STAT. § 1-607. For the reasons stated above, Plaintiff alleges no such activity before his discharge. This claim should also be dismissed.

**C. The Amended Complaint States No Claim Under N.C. Gen. Stat. § 75-1.1.**

North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") prohibits unfair or deceptive acts "in or affecting commerce." N.C. GEN. STAT. § 75-1.1(a). The Supreme Court of North Carolina has held that although the statutory definition of commerce is broad, "it is not intended to apply to all wrongs in a business setting," and that "most employer-employee disputes" fall outside it. *Dalton v. Camp*, 353 N.C. 647, 656–57, 548 S.E.2d 704 (2001) (citing *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 593, 403 S.E.2d 483, 492 (1991)); *see also id.* at 656 (discussing *Buie v. Daniel Int'l Corp.*, 56 N.C. App. 445, 289 S.E.2d 118 (1982), which held that employment disputes involving wrongful termination fall outside the intended scope of § 75-1.1).

Every allegation in the Amended Complaint arises from Plaintiff's employment with Breece: his assignments, his discipline, his discharge, and his workplace complaints.

Plaintiff does not allege any egregious conduct outside the employment relationship that could bring this dispute within the Act. Consequently, the UDTPA claim should be dismissed.

### D. No Claim Under Stated under N.C. GEN. STAT. § 143-422.2.

THE NORTH CAROLINA EQUAL EMPLOYMENT PRACTICES ACT ("NCEEPA"), N.C. GEN. STAT. § 143-422.2, is a declaration of public policy. It does not create a private cause of action. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). As the Fourth Circuit explained, "[n]either the North Carolina Supreme Court nor the North Carolina Court of Appeals has recognized a private cause of action under the NCEEPA," and most courts have applied the NCEEPA only to common law claims or in connection with other specific statutory remedies. *Id.* The Fourth Circuit accordingly has held that there is no private right of action under North Carolina law for harassment, *id.*, or for retaliation, under § 143-422.2. *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 719 (4th Cir. 2003).

Plaintiff invokes § 143-422.2 directly (DE 4 at 3), and that freestanding statutory claim should be dismissed. The Amended Complaint does not plead any common-law claims.

### E. The Amended Complaint States No Claim Under the Greensboro Code of Ordinances.

Plaintiff also cites Chapter 12, Article IV, Division 4 of the Greensboro Code of Ordinances (DE 4 at 3). A city's ordinance-making power extends to acts, omissions, or conditions "detrimental to the health, safety, or welfare of its citizens and the peace and

dignity of the city."  N.C. GEN. STAT. § 160A-174(a).  The Amended Complaint alleges no fact connecting Breece, or any employment decision about which Plaintiff complains, to the City of Greensboro.  It alleges that Breece is located at 631 Old Thomasville Road in High Point, that Plaintiff's place of employment was at that High Point address, and that the only job site Plaintiff identifies by location, the Roberts Court project, is in High Point (DE 4 at 2–3, ¶ 16).  The only Greensboro connection alleged is Plaintiff's own residence (*Id.* ¶ 1).

Nor does the Amended Complaint allege that Plaintiff invoked any procedure established by the ordinance.  The ordinance sets forth a standard administrative procedure and other procedural prerequisites that have not been followed or adhered to that preclude even the limited remedies provided for in the Ordinance.  These include filing "written complaint with human rights department within sixty (60) days after the alleged violation occurred…" *See* Chap. 12, Div. 2, § 12-77.  Because Plaintiff failed to pursue, let alone exhaust, his administrative remedies, any claim based on the ordinance is precluded.

The Amended Complaint therefore pleads no facts from which the Court could infer that the Greensboro ordinance governs the conduct at issue or affords Plaintiff a remedy against Breece, and this claim should be dismissed.

### F. The Safety, Transportation, and Building-Code Allegations Do Not State a Claim.

Liberally construed, the Amended Complaint might be read to assert claims based on Plaintiff's allegations that Breece violated federal workplace-safety and motor-carrier

regulations and local building requirements, engaged in "planned obsolescence," or retaliated against him for complaining about those matters. (DE 4, ¶¶ 10–11, 17–19, 27). Any such claim fails.

First, "planned obsolescence" is not a cause of action, and the regulations Plaintiff cites, 29 C.F.R. § 1926.652 and 49 C.F.R. §§ 382.213 and 392.4, do not purport to create private rights of action. Second, the statutes that protect employees who report such matters channel their complaints through administrative agencies. An employee who believes he was discharged for raising occupational-safety concerns may file a complaint with the Secretary of Labor within thirty days. 29 U.S.C. § 660(c)(2). An employee who believes he was discharged for raising commercial-motor-vehicle safety concerns may file a complaint with the Secretary of Labor within 180 days. 49 U.S.C. § 31105(b)(1). North Carolina's Retaliatory Employment Discrimination Act requires an employee to file a written complaint with the Commissioner of Labor within 180 days and to obtain a right-to-sue letter before filing a civil action. N.C. GEN. STAT. §§ 95-242(a), 95-243.

The Amended Complaint does not invoke any of these statutes or allege that Plaintiff pursued any of these procedures. To the extent the Amended Complaint asserts any claims based on these allegations, they should be dismissed.

**G. Any Negligence Claim Is Barred by the Workers' Compensation Act.**

Plaintiff's state-court case was docketed as a gross-negligence action (DE 1-1 at 39–41), and the Amended Complaint seeks damages for trauma allegedly resulting from "a near-fatal incident (being buried alive) caused by the Company's gross negligence"

(DE 4 at 10). The North Carolina Workers' Compensation Act provides the exclusive remedy against an employer for an employee's injury by accident arising out of and in the course of employment. N.C. GEN. STAT. § 97-10.1. The narrow exception recognized in *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), applies only "when an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct." *Id.* at 340–41. The Amended Complaint alleges no facts about the incident at all: not when or where it occurred, what Breece did, or what Breece knew. Negligence, even gross negligence, does not satisfy *Woodson*. Further, Plaintiff fails to recite any facts from any of alleged incident or any standard of care that was allegedly breached. Accordingly, any negligence claim should be dismissed.

## III. PLAINTIFF'S TITLE VII CLAIMS SHOULD BE LIMITED TO THOSE THAT ARE TIMELY AND EXHAUSTED.

### A. Title VII Claims Based on Acts Before February 19, 2025, Including the Hostile-Work-Environment Claim, Are Time-Barred.

In North Carolina, Title VII requires a charge to be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). "In non-deferral states like North Carolina, both the ADEA and Title VII require a plaintiff to file an administrative charge with the EEOC within 180 days of the alleged misconduct." *Lane v. Lucent Techs., Inc.*, 388 F. Supp. 2d 590, 598 (M.D.N.C. 2005). Plaintiff's charge is dated August 18, 2025 (DE 1-1 at 14). Any act that occurred before February 19, 2025, is therefore untimely.

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," and "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. Any Title VII claim based on a discrete act that occurred before February 19, 2025, including the December 17, 2024 assignment of the co-worker to Plaintiff's crew and any denial of training, promotion, or driving duties that occurred before that date, is time-barred.

Plaintiff's hostile-work-environment claim is untimely in its entirety. A hostile-work-environment claim may reach conduct outside the limitations period only "so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105; *see id.* at 117. The Amended Complaint identifies the source of the alleged harassment as a single co-worker and dates the alleged harassment to September 3, 2024, and, possibly, December 17, 2024 (DE 4, ¶¶ 6–8, 12). It alleges no harassing act by that co-worker, or by anyone else, on or after February 19, 2025. The events Plaintiff alleges in 2025 are discrete employment actions by management, such as work assignments, write-ups, and his discharge, which are separately actionable, if at all, as discrete acts and cannot be used to revive an untimely harassment claim. *See id.* at 113–14. Because no act contributing to the alleged hostile environment is alleged to have

occurred within the 180-day period, the hostile-work-environment claim should be dismissed.

**B. Claims Based on the Denial of Training, Promotion, and Driving Assignments Exceed the Scope of Plaintiff's Charge.**

An EEOC charge "frames the scope of future litigation." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Id.* (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)). "[T]he allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *Id.* at 509 (quoting *Evans*, 80 F.3d at 962–63). Thus, "a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009), *overruled in part by Fort Bend Cty. v. Davis*, 568 U.S. 541, 139 S. Ct. 1843 (2019).

Plaintiff's charge checked only "Retaliation" and identified June 10, 2025, the date of his discharge, as the only date of discrimination (DE 1-1 at 12). Its narrative does not mention equipment-operator training or promotion to an Equipment Operator position. As to driving duties, the charge does not allege that Breece denied Plaintiff commercial driving work; in fact, it alleges the opposite, that Breece "offered me a full-time CDL-required driving position, which I respectfully declined" (*Id.* at 13). A reasonable

investigation of that charge would not have encompassed claims that Breece discriminatorily denied Plaintiff training, promotion, or driving assignments. Plaintiff's Title VII claims based on those allegations (DE 4, ¶¶ 14–15) were not administratively exhausted and should be dismissed.

### C. The Title VII Retaliation Claim Cannot Rest on Safety or Building-Code Complaints or on Post-Termination Reports.

Title VII prohibits retaliation against an employee because he "has opposed any practice made an unlawful employment practice by this subchapter," or because he has participated in a Title VII investigation, proceeding, or hearing. 42 U.S.C. § 2000e-3(a). Plaintiff alleges that Breece retaliated against him for "legally protected safety reports and reports of racial harassment" (DE 4, ¶ 27.) Complaints about trench protection, vehicle inspections, drug and alcohol rules, building codes, or "planned obsolescence" do not oppose any practice that Title VII makes unlawful, and they cannot support a Title VII retaliation claim. Plaintiff's July 1, 2025 contact with the High Point Housing Authority (DE 4, ¶ 26) likewise is not opposition to a Title VII violation, and because it occurred after his discharge, it could not have caused that discharge. Plaintiff's Title VII retaliation claim should therefore be dismissed to the extent it is based on any activity other than his alleged complaints of racial harassment. Breece has answered the remaining retaliation claim and denies it.

## CONCLUSION

For the foregoing reasons, Breece respectfully requests that the Court grant its Partial Motion to Dismiss; dismiss Plaintiff's claims under the federal False Claims Act, the North Carolina False Claims Act, N.C. GEN. STAT. § 75-1.1, N.C. GEN. STAT. § 143-422.2, and the Greensboro Code of Ordinances, and any claim based on the safety, transportation, and building-code allegations or on negligence; dismiss Plaintiff's Title VII claims to the extent they are based on acts occurring before February 19, 2025, including his hostile-work-environment claim; dismiss his Title VII claims based on the alleged denial of training, promotion, and driving assignments; and dismiss his Title VII retaliation claim to the extent it rests on activity other than opposition to practices made unlawful by Title VII.

This, the 30th day of September, 2026.

OF COUNSEL:
HIGGINS BENJAMIN, PLLC
301 N. Elm Street, Suite 800
Greensboro, NC 27401-2260
(336) 273-1600
jwall@greensborolaw.com

/s/ *Jonathan Wall*
Jonathan Wall
N.C. State Bar No. 22839

*Attorney for Defendant*

## CERTIFICATE OF WORD COUNT

Pursuant to LR 7.3(d)(1), the undersigned certifies that the foregoing brief, including the body of the brief, headings, and footnotes, contains fewer than 6,250 words, as determined by the word-count feature of the word-processing software used to prepare it.

/s/ *Jonathan Wall*
*Attorney for Defendant*

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, and that a true and accurate copy of the pleading was served upon Plaintiff by placing a copy of same in the United States mail, first class postage pre-paid, addressed as follows:

Mr. Travis Andre Goldston
3207 Morley Road
Greensboro, NC 27405

This, the 30th day of September, 2026.

__/s/ *Jonathan Wall*__________
*Attorney for Defendant*